UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:14-CR-00104-3-JRG |
| | ) | |
| MORRIS ANTHONEY PHILLIPS | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Morris Anthoney Phillips' Pro Se Request for Compassionate Release under Federal Rule 3582 [Doc. 409], the Federal Defender Services of Eastern Tennessee's Supplement to Defendant's Pro Se Motion for Compassionate Release [Doc. 425], and the United States' Response in Opposition [Doc. 432]. For the reasons herein, the Court will deny Mr. Phillips' motion.

### I. BACKGROUND

In 2015, Mr. Phillips pleaded guilty to a conspiracy to distribute and to possess with the intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846; a conspiracy to distribute a quantity of oxycodone, in violation of of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 846; and a conspiracy to commit money laundering, in violation of 18 U.S.C. 1956(h). [Plea Agreement, Doc. 170, at 1–2; Minute Entry, Doc. 194]. At sentencing, his total offense level was 34 and his criminal history category was I. [Statement of Reasons, Doc. 357, at 1]. His advisory guidelines range was 151 months to 188 months. [*Id.*]. The Court sentenced him to a below-guidelines sentence of 144 months' imprisonment. [J., Doc. 356, at 3].[1]

---

[1] Mr. Phillips is scheduled for release in January 2025.

Acting pro se, Mr. Phillips, who is forty-four years of age, now moves the Court for compassionate release under 18 U.S.C. § 3582(c)(1)(A) because of the COVID-19 pandemic, claiming "he has bullet fragments in his chest and lungs which makes [sic] his lungs vulnerable of catastrophic failure should he contract the covid-19 virus." [Def.'s Mot. at 2]. After receiving Mr. Phillips' motion, the Court appointed counsel to him, and the Federal Defender Services of Eastern Tennessee ("FDS") later filed a supplement on his behalf. In the supplement, FDS states that Mr. Phillips also suffers from "chronic hepatitis B, hypocellularity, [and] hematuria," all of which, FDS argues, "place him at higher risk of severe illness from COVID-19." [Def.'s Suppl. at 2]. In addition, under 18 U.S.C. § 3553(a), FDS maintains that "the totality of the circumstances demonstrates that reducing Mr. Phillips' sentence to time served or releasing him to serve the balance of his sentence on home confinement is 'sufficient, but not greater than necessary,' to serve the purposes of sentencing under § 3553(a)." [*Id.* at 19]. In response, the United States opposes Mr. Phillips' motion, contending that he has failed to identify an extraordinary and compelling reason for his release and that § 3553(a)'s factors weigh against his release. [United States' Resp. at 8–11]. Having carefully considered the parties' arguments, the Court is now prepared to rule on Mr. Phillips' motion.

## II. ANALYSIS

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). Although § 3582(c)(1)(A) begins with the declaration that "[t]he court may not modify a term of imprisonment once it has been imposed," Congress enacted the First Step Act, Pub. L. No. 115-319, 132 Stat. 5194 (2018), which amended § 3582(c)(1)(A) so that

2

courts can consider motions for compassionate release once a defendant either exhausts his administrative remedies with the Bureau of Prisons or waits thirty days after submitting a request to the warden. Section § 3582(c)(1)(A) now states:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). The United States acknowledges that "[t]he Court has authority to consider the motion because Phillips has satisfied the exhaustion requirement." [United States' Resp. at 1].

Under § 3582(c)(1)(A), compassionate release is "discretionary, not mandatory," *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) (citation omitted), and the statute contains three substantive requirements that the Court must address in sequential order before it can

3

grant compassionate release, *id.*; *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). First, the Court must determine that "extraordinary and compelling reasons warrant" a sentence reduction. *Ruffin*, 978 F.3d at 1004 (quoting § 3582(c)(1)(A)(i)). Second, the Court must determine that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* (quoting § 3582(c)(1)(A)). And third, the Court must consider any applicable factors under § 3553(a) "and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Jones*, 980 F.3d at 1108 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010))).

### A. The First Requirement: Extraordinary and Compelling Circumstances

When determining whether an inmate, in requesting compassionate release, has identified reasons that are extraordinary and compelling in nature, "courts have universally turned to USSG § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." *United States v. Coker*, No. 3:14-CR-085, 2020 WL 1877800, at *3 (E.D. Tenn. Apr. 15, 2020) (quotation omitted). Section 1B1.13 states:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; or
>
> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

4

(3) The reduction is consistent with this policy statement.

USSG § 1B1.13(1)–(3).

Although § 1B1.13 does not define "extraordinary and compelling reasons," the guideline commentary's first application note lists four "circumstances" in which "extraordinary and compelling reasons" are present:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>> (A) Medical Condition of the Defendant.—
>>
>>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>>
>>> (ii) The defendant is—
>>>
>>>> (I) suffering from a serious physical or medical condition,
>>>> (II) suffering from a serious functional or cognitive impairment, or
>>>> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
>> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>>
>> (C) Family Circumstances.—
>>
>>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

USSG § 1B1.13 cmt. n.1(A)–(D). In these provisions, "Application Note 1 identifies three specific extraordinary and compelling reasons (tied to the defendant's health, age, or family circumstances) and a fourth catchall," *Ruffin*, 978 F.3d at 1005 (citing *id.*), under which the Bureau of Prisons' director has license to grant release for "reason[s] other than" the three reasons in Application Note 1(A)–(C), USSG § 1B1.13 cmt. n.1(D).

But the First Step Act "allow[s] defendants," for the first time, "to file reduction-of-sentence motions when the Bureau refuse[s] to do so," *Ruffin*, 978 F.3d at 1004, and district courts, when considering these motions and determining whether extraordinary and compelling circumstances exist for an inmate's release, now have authority to consider "reason[s] other than" the three reasons in Application Note 1(A)–(C), *see Jones*, 980 F.3d at 1111 (stating that "the as-written catch-all provision," which "still refers to the Director of the BOP as the absolute arbiter of 'extraordinary and compelling,'" "contravenes Congress's motivation for reforming compassionate release in the First Step Act and ignores the Sentencing Commission's grounds for augmenting § 1B1.13's application notes"); *compare Ruffin*, 978 F.3d at 1006, 1008 (declining to decide whether, "after the First Step Act, district courts may find additional extraordinary and compelling reasons other than those in [§ 1B1.13's] commentary (such as a once-in-a-century pandemic)," or whether, instead, "Application Note 1's reasons remain exclusive and that the note's catchall delegates to the Bureau of Prisons (not the courts) the task of identifying other reasons"), *with Jones*, 980 F.3d at 1101, 1109, 1111 ("We resolve a debate that we first teed up in *Ruffin*, holding that" district courts, "[u]ntil the Sentencing Commission updates § 1B1.13 to

6

reflect the First Step Act," have "full discretion to define 'extraordinary and compelling' without consulting the policy statement [in] § 1B1.13" (footnote omitted)).

The district courts' authority to eschew Application Note 1(A)–(C) comes from the Sixth Circuit's recent decision in *Jones*, in which the Sixth Circuit observed that the Sentencing Commission has not updated § 1B1.13 in response to the First Step Act and concluded that § 1B1.13, in its current form, therefore cannot serve as an applicable policy statement under § 3582(c)(1)(A). *Jones*, 980 F.3d at 1101, 1109; *compare* 18 U.S.C. § 3582(c)(1)(A) (stating that district courts must conclude that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission"), *with Jones*, 980 F.3d at 1101, 1109 (holding that § 1B1.13 is "not an 'applicable' policy statement in cases where incarcerated persons file their own motions in district court for compassionate release" because "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018" (citation omitted)).

In deciding *Jones*, however, the Sixth Circuit did not appear altogether to forbid district courts from looking to § 1B1.13—that is, to the "three specific extraordinary and compelling reasons" in Application Note 1(A)–(C), *Ruffin*, 978 F.3d at 1005 (citing USSG § 1B1.13 cmt. n.1(A)–(D))—with an eye toward guidance, rather than with an eye toward deference. *See Jones*, 980 F.3d at 1109, 1111 (stating that § 1B1.13 "does not *wholly* survive the First Step Act's promulgation" and expressing an intention of "preserving as much of § 1B1.13 that can be saved" (emphasis added)); *see also id.* at 1111 (stating that "federal judges *may* skip" an analysis under § 1B1.13 and have "full discretion" to choose whether "to define 'extraordinary and compelling' without consulting the policy statement [in] § 1B1.13" (emphasis added) (footnote omitted))); *see also United States v. Sherwood*, ___ F.3d ___, 2021 WL 345405, at *1, 2 (6th Cir. Feb. 2, 2021) (stating that § 1B1.13 "no longer provides an *independent* basis for

7

denying compassionate release" and remanding the case because the district court had "relied on § 1B1.13(2) as the *sole* basis for denying [the defendant's] compassionate release," at the exclusion of § 3553(a)'s factors (emphasis added) (citation omitted)); *United States v. Carr*, No. 20-5784, at 3 (6th Cir. Oct. 26, 2020) (PACER) (concluding that "the district court did not err by considering the Sentencing Commission's statement defining 'extraordinary and compelling reasons' when deciding whether [the defendant's] circumstances warranted compassionate release" because the district court merely "treated the policy statement as 'helpful guidance'" (quotation and citation omitted)); *but see United States v. Mullins*, No. 20-5848, at *2–3 (6th Cir. Jan. 8, 2021) (PACER) (vacating this Court's order, which the Court had entered prior to the Sixth Circuit's decision in *Jones*, and remanding the case so that the Court could "recognize its discretion to find extraordinary and compelling reasons other than those listed [in § 1B1.13]").

Even so, the Court, in its discretion, will abstain from an analysis under Application Note 1(A)–(C)—outmoded as it is—and instead turn to the Center of Disease Control's guidelines in considering whether Mr. Phillips' underlying conditions, against the backdrop of the COVID-19 pandemic, constitute an extraordinary and compelling reason for his release. *See, e.g.*, *Cameron v. Bouchard*, 462 F. Supp. 3d 746, 756–57 (E.D. Mich.), *vacated on other grounds*, 815 F. App'x 978 (6th Cir. 2020); *Awshana v. Adduccl*, 453 F. Supp. 3d 1045, 1050 (E.D. Mich. 2020); *see also Valentine v. Collier*, 140 S. Ct. 1598, 1600 n.2 (2020) (citing the CDC's guidelines in a case involving COVID-19); *cf. Sch. Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 287 (1987) (stating that "courts normally should defer to the reasonable medical judgments of public health officials" (footnote and quotation omitted)). According to the CDC's guidelines, "[p]eople of any age with the following conditions *are at increased risk* of severe illness from" COVID-19:

- Cancer
- Chronic kidney disease

8

- COPD (chronic obstructive pulmonary disease)
- Down syndrome
- Heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies
- Immunocompromised state (weakened immune system) from solid organ transplant
- Obesity (body mass index [BMI] of 30 kg/m$^2$ or higher but < 40 kg/m$^2$)
- Severe Obesity (BMI ≥ 40 kg/m$^2$)
- Pregnancy
- Sickle cell disease
- Smoking
- Type 2 diabetes mellitus

*Coronavirus Disease 2019 (COVID-19): People Who Are at Higher Risk for Severe Illness*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 3, 2021).

Mr. Phillips' underlying conditions—bullet fragments in his lungs, hematuria, hepatitis B, and hypocellularity—match none of those that the CDC identifies as likely to place an individual at a heightened risk of severe illness from COVID-19. While the Court sympathizes with Mr. Phillips' concerns, it is unwilling to order the release of prisoners whose underlying conditions, based on the CDC's guidelines, do not place them at a heightened risk of severe illness from COVID-19; otherwise, the Court, to be evenhanded, would face the untenable situation of having to release all prisoners with any underlying condition. *See United States v. Wright*, No. CR-16-214-04, 2020 WL 1976828, at *5 (W.D. La. Apr. 24, 2020) ("The Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." (footnote omitted)); *United States v. Dusenbery*, No. 5:91-cr-291, 2019 WL 6111418, at *2 (N.D. Ohio Nov. 18, 2019) (recognizing that "compassionate release due to a medical condition is an extraordinary and rare event" (quotation omitted)).

But even if Mr. Phillips had identified an extraordinary and compelling reason for his release under § 3582(c)(1)(A), he still would not be entitled to release because he has not shown

9

that § 3553(a)'s factors weigh in favor of it. *See Ruffin*, 978 F.3d at 1008 ("We have repeatedly recognized that district courts may deny relief under the § 3553(a) factors even if 'extraordinary and compelling' reasons would otherwise justify relief." (citations omitted)); *see also Sherwood*, ___ F.3d ___, 2021 WL 345405 at *2 (stating that "[the defendant] must make a compelling case as to why the sentencing court's § 3553(a) analysis would be different if conducted today" (citation omitted)).[2]

### B. The Third Requirement: Applicable Factors under § 3553(a)

The Court considered § 3553(a)'s factors "in some depth at the original sentencing," *United States v. Curry*, 606 F.3d 323, 331 (6th Cir. 2010), so it has no obligation to readdress all of those factors now, *see* 18 U.S.C. § 3582(c)(1)(A) (requiring district courts to consider § 3553(a)'s factors "to the extent that they are applicable"); *cf. United States v. Jones*, 407 F. App'x 22, 25 (6th Cir. 2011) (stating that in *Curry* "we held that the district court did not abuse its discretion even though it had not expressly considered all of the § 3553(a) factors" because "§ 3582(c)(2) proceedings 'do not constitute a full resentencing of the defendant' and do not require the same procedural formalities as plenary sentencings" (quoting *Curry*, 606 F.3d at 330–31)); *see Jones*, 980 F.3d at 1114 (stating that "[d]istrict courts should consider all *relevant* § 3553(a) factors before rendering a compassionate release decision" (emphasis added) (citing *Gall v. United States*, 552 U.S. 38, 49–50 (2007))). "[A]s long as the record *as a whole*

---

[2] The Court will exercise its discretion to skip an analysis under § 1B1.13 in favor of an analysis under § 3553(a). *See Jones*, 2020 WL 6817488 at *7, 9 (holding that § 1B 1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release" and stating that district courts, therefore, "may skip step two of the § 3582(c)(1)(A) inquiry"); *United States v. Lamar*, No. 18-20183, 2020 WL 7319431, at *4 (E.D. Mich. Dec. 10, 2020) ("The government . . . point[s] to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. That argument is a dead letter after the Sixth Circuit's decision in *Jones* . . . . That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. (quoting 18 U.S.C. § 3553(a)(2)(C))).

demonstrates that the pertinent factors were taken into account," the Court's analysis is adequate. *Jones*, 980 F.3d at 1114 (quotation omitted).

In considering the record as a whole, the Court turns first to the original sentencing, at which it addressed the nature and circumstances of Mr. Philips' offenses; Mr. Phillips' history and characteristics; the seriousness of Mr. Phillips' offenses; and the need for the sentence to promote respect for the law, provides just punishment, afford adequate deterrence, and protect the public. *See* 18 U.S.C. § 3553(a)(1)–(2). At sentencing, the Court described Mr. Phillips' offense under § 841(a)(1) and (b)(1)(B) as "very serious" and observed that it "involved a very, very large quantity of marijuana," 562 pounds of it, to be exact. [Hr'g Tr., Doc. 370, at 72:16–18, 73:3–4]; *see generally United States v. Dilg*, 726 F. App'x 368, 371 (6th Cir. 2018) ("We have categorically labeled drug offenses as serious." (citing *United States v. Moss*, 217 F.3d 426, 431 (6th Cir. 2000))); *cf. United States v. Suber*, 75 F. App'x 442, 444 (6th Cir. 2003) (describing a conspiracy to distribute heroin as "grave"). The Court also stated that the offense "involved a very substantial amount of cash, more than a million dollars." [Hr'g Tr. at 72:19–20]. "[T]he large quantity of money and marijuana involved in this case," the Court said, "does in fact suggest a risk of recidivism." [*Id.* at 74:13–15].

And "of special importance," the Court noted, was the fact that when authorities raided Mr. Phillips' residence during a reverse sting operation, Mr. Phillips barricaded himself inside with a twelve-year old child, who "was placed in harm's way." [*Id.* at 73:20–25]. Pistol magazines were also present in the residence. [*Id.* at 14–15]. The Court ultimately concluded that "there needs to be a substantial sentence imposed here to specifically deter [Mr. Phillips] from further criminal conduct." [*Id.* at 76:24–25].

11

Against this backdrop, Mr. Phillips does not make a "compelling case as to why the sentencing court's § 3553(a) analysis would be different if conducted today." *Sherwood*, ___ F.3d ___, 2021 WL 345405 at *2. Mr. Phillips acknowledges that "the circumstances of the present offense qualified [him] for the serious sentence that this Court originally imposed" and that the only "overriding factor under § 3553(a) that was not present at the time of sentencing is the COVID-19 pandemic and the serious risk it presents." [Def.'s Suppl. at 19]. In short, he presents the Court with no appreciable argument that his "personal circumstances—beyond the COVID-19 outbreak—ha[ve] changed so that the district court should weigh the § 3553(a) factors differently than it had at the original sentencing," *United States v. Navarro*, ___ F.3d ___, 2021 WL 287756, at *3 (6th Cir. Jan. 28, 2021). Instead, he asserts that "just punishment does not warrant a sentence that includes exposure to a life-threatening illness." [Def.'s Suppl. at 19].

But the general threat of COVID-19—that is, the fear that it may infiltrate a prison's population—cannot justify compassionate release. *See United States v. Bothra*, No. 20-1364, 2020 WL 2611545, at *2 (6th Cir. May 21, 2020) ("Courts have been reluctant to find that generalized fears of contracting COVID-19, without more, constitute a compelling reason." (citation omitted)); *see also Carr*, No. 20-5784 at 4 ("[The defendant's] allegations involving the BOP's failure to respond adequately to the risks posed by Covid-19 are the sort of 'generalized fears' that courts have found do not constitute extraordinary and compelling reasons for compassionate release." (citations omitted)); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]"); *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020) ("The mere

12

possibility of an outbreak at his facility does not equate to a compelling enough reason to justify [the defendant's] release." (citation omitted)); *see also United States v. Sabot*, No. 2:14-cr-39, 2020 WL 6274983, at *4 (W.D. Pa. Oct. 26, 2020) ("The mere presence of COVID-19 at FCI Petersburg Medium does not automatically entitle inmates with medical conditions to compassionate relief."). In sum, Mr. Phillips fails to demonstrate that § 3553(a)'s factors work in favor of his release.

### C. The Eighth Amendment

Next, Mr. Phillips cites the Eighth Amendment's prohibition against cruel and unusual punishment and appears to maintain that the BOP has exposed him to "unreasonable" and "dangerous" conditions while in custody. [Def.'s Suppl. at 19]. The proper forum for an Eighth Amendment claim of deliberate indifference to a prisoner's serious medical needs, however, is not a criminal proceeding like this one but a civil proceeding. *See Hinneburg v. Miron*, 676 F. App'x 483, 486 (6th Cir. 2017) (stating that "'deliberate indifference to serious medical needs of prisoners' constitutes an Eighth Amendment violation, actionable under 42 U.S.C. § 1983" (quotation omitted)); *see also Carr*, No. 20-5784 at 3 ("The district court also did not err by determining that [the defendant's] Eighth Amendment claim was not an extraordinary and compelling reason to grant compassionate release. As noted by the district court, a compassionate release proceeding is not the proper vehicle to seek relief for a claimed constitutional violation." (citation omitted)). If Mr. Phillips wishes to pursue a civil action, he must mail a complaint to the Clerk's Office, along with either the requisite filing fee or a motion to proceed in forma pauperis.

13

### D. Halfway-House Placement

Lastly, Mr. Phillips argues, in the alternative, that the Court should recommend to the BOP that he serve the final twelve months of his custodial sentence in either a residential reentry center or in home confinement. [Def.'s Suppl. at 19]. In this vein, Congress has directed the BOP "to the extent practicable" to "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c)(1).

The BOP therefore ought to be free to make an independent determination, without influence from the Court, as to whether Mr. Phillips is an appropriate candidate for placement in a residential reentry center or home confinement. *See United States v. Justice*, No. 3:14-CR-103, 2020 WL 2748044, at *2 (E.D. Tenn. May 27, 2020) ("[B]ecause the Bureau of Prisons is in the best position to determine the proper placement of inmates taking into account individual considerations based on an inmate's background, medical history, and general considerations about public safety, the Court is not prepared to make a recommendation as to [the defendant]."); *cf. McKune v. Lile*, 536 U.S. 24, (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise." (citation omitted)). The Court therefore declines to make the recommendation that Mr. Phillips requests.

### III. CONCLUSION

While the Court sympathizes with Ms. Phillips' concerns, he is not entitled to compassionate release under § 3582(c)(1)(A) because he has not identified an extraordinary and compelling reason for his release and the relevant factors under § 3553(a) militate against his

release. His Request for Compassionate Release under Federal Rule 3582 [Doc. 409] is therefore **DENIED**.

So ordered.

ENTER:

                                                  s/J. RONNIE GREER
                                  UNITED STATES DISTRICT JUDGE